# PATRICK J. JOYCE, ESQ.

Attorney at Law
70 Lafayette Street - 2nd Floor
New York, New York 10013
(212) 285-2299
FAX (212) 513-1989

New Jersey Office:
4 W. South Orange Avenue
South Orange, NJ 07079
(973) 324-2711

April 23, 2012

Honorable George B. Daniels
United States District Judge
United States District Court
Southern District of New York
New York, New York

      Re:    United States v. Roque Irizarry, 11 Cr.-470-02 (GBD)

Dear Judge Daniels,

      I am the attorney for Roque Irizarry, the defendant in the above referenced matter. Mr. Irizarry pleaded guilty and allocuted to his criminal conduct on December 21, 2011. Mr. Irizarry is scheduled to be sentenced before your Honor on April 26, 2012. This letter brief is respectfully submitted, in lieu of a more formal submission, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, in an attempt to advise the Court of several matters which the defendant will raise at the time of his sentence, which hopefully will aid in the determination of the appropriate sentence.

## THE PRE SENTENCE REPORT GUIDELINE CALCULATION

      The Probation Report accurately points out that Mr. Irizarry has pleaded guilty to a lesser included offense under Count One of the indictment which charges him with violating 21 USC ¶¶ 846, 841(a)(1) and 841(b)(1)(c). The report also accurately places Mr. Irizarry in Criminal History Category I. (PSR P. 19) The report also calculates an adjusted offense level of Thirty-One (23), which carries with it a suggested guideline sentence range of from 46-57 months.

## THE GUIDELINE CALCULATION AND ATTENDANT SENTENCE RANGE ARE NOT BINDING ON THIS COURT

      As the Court is fully aware the Supreme Court in United States v. Booker, 543 U.S. 220 (2005) overturned the mandatory nature of the Guidelines and replaced them with a mandatory statute, 18 USC § 3553. The factors outlined in § 3553(a) require that a sentence be not greater than necessary to satisfy the need for just punishment, respect for the law, deterrence, prevention of further crimes, treatment and training. In light of these factors the defendant

1

respectfully suggests that a sentence of 18 months satisfies these requirements even though the sentence is below Mr. Irizarry's suggested Guideline level.

Section 3553(a) is referred to in Booker and much post-Booker case law as containing various "factors" – one of which is the guidelines – that must now be considered in determining a sentence. This is a misleading oversimplification. Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the "factors" to be considered in fulfilling that mandate. The sentencing mandate contains a limiting principle favorable to defendants and is the overriding principle that limits the sentence a court may impose.

The overriding principle and basic mandate of Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in Section 3553(a)(2). The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The Parsimony Provision is not just another "factor" to be considered along with the others set forth in Section 3553(a) (discussed below) – it sets an independent limit on the sentence a court may impose. See United States v. Denardi, 892 F.2d 269, 276-77 (3rd Cir. 1989) Since § 3553(a) requires a sentence to be no greater than necessary to meet the purposes of sentencing, imposition of sentence greater than necessary to meet those purposes is reversible, even if within the suggested guideline range. Id.

It should be noted at the outset that the Guidelines are flawed in their construction by the fact that the Guideline range is constructed almost solely of *aggravating* factors. The only mitigating factors are acceptance of responsibility points and role in the offense. Mitigating factors are not part of the Guideline range and the policy statements attached to the Guidelines highly discourage the use of mitigating factors as a basis for *departure*. Thus, since the Supreme Court's decision in Booker the case law is clear that although a Guideline calculation is a necessary beginning point of any sentence consideration, it should not be the final arbiter of what a reasonable and just sentence should be. The case law has also made it clear that a Court can deviate from the Guidelines if it feels that they require a sentence that is greater than necessary to satisfy the factors of § 3553. The Supreme Court has urged each sentencing Court to consider **all** mitigating factors and to reject policy statements of the Guidelines that restrict the use of mitigating factors. See, United States v. Rita, 551 U.S. 338 (2007) and United States v. Gall, 552 U.S. at 50 n.6, 58-60 (2007). Gall at 59 n.11 requires that a sentencing Court consider all "kinds of sentences available" under § 3553 even if the Guidelines only recommend a prison sentence. In fact Courts are now invited to consider arguments that the applicable guidelines fail properly to reflect § 3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless of the Guidelines. Rita, 127 S. Ct. at 2465. Courts "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," Kimbrough, 128 S. Ct. at 570 (internal quotation marks omitted), and when they do, the courts of appeals may not "grant greater fact-finding leeway to [the Commission] than to [the] district judge." Rita, 127 S. Ct. at 2463.

In Kimbrough v. U.S., 128 S.Ct.558 (2007), the court affirmed a District Court's decision to deviate from the Guideline's 100-1 "cocaine base" ratio in sentencing a defendant. In Gall v. United States 128 S. Ct. 586 (2007) the Court ruled that a District Court's non-guideline sentence did not involve an abuse of discretion and therefore could not be invalidated by Appellate Review. The common thread running through these cases is that a District Court is bound only by the factors contained in 18 USC § 3553. In admonishing the appellate court in Gall, the Court

2

stated, "But it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. On abuse of discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." United States v. Gall, supra at *12.

## 18 USC 3553 FACTORS

In determining the sentence minimally sufficient to comply with Section 3553(a), the court must consider several factors contained therein. Some of these factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed" (4 -5) "the range established by the guidelines and any pertinent policy statements (6) the need to avoid unwarranted sentencing disparity. 18 U.S.C. § 3553(a)(1), (2),(4), (5)(7).

### Nature and Circumstances of the Offense and the History of the Defendant

When the Court considers the nature and circumstances of the offense and the history and characteristics of Mr. Irizarry it will become clear the requested sentence of Eighteen (18) Months is appropriate. The PSR report has detailed the numerous factors which indicate why Mr. Irizarry should be treated with leniency. The report documents the family and educational history of Mr. Irizarry as well as the family support network which he enjoys. (PSR Paragraphs 45-49) For his entire life, Mr. Irizarry has not known a father and he has been a supportive member of a family consisting of himself his brother and mother. Although he was shifted at a young age between several family members, in different countries, he was able to maintain important relationships. Roque is not an accomplished student. (P.59, 39) He has learned how to become a "barber" and he has also worked in the restaurant industry. His problems in school may have contributed to his inability to seek and maintain employment in the mainstream labor market.

The circumstances of this offense also lend credence to the request for leniency. In this case, a cooperating witness (CW) approached Mr. Irizarry, asking him to find heroin. Mr. Irizarry did not have ready access to the controlled substance, but rather needed to go to the co-defendant's residence to purchase the heroin. These purchases occurred in September and November of 2010. Mr. Irizarry was arrested in March of 2011. While this conspiracy lasted from September of 2010 through March of 2011, Mr. Irizarry was involved in only these two isolated purchases. Police reports suggest that the total purchase price in these events was limited to approximately Fifty Two Hundred dollars. ($5,200) Mr. Irizarry was never involved in any violence in connection with this conspiracy.

At Page 20 of the PSI, PO Kim acknowledges that Mr. Irizarry, "is at a crossroad in his young life". It should be noted that when under the supervision of the court, Mr. Irizarry has responded well, and he has never been a discipline problem in any facility in which he has been lodged. He has spent over a year in jail. It is the position here, that , given who Mr. Irizarry is and what he has done, this period of incarceration is sufficient punishment.

### The Need for the Sentence Imposed

In addressing this subsection the Court should consider, among other things, the effect the sentence will have upon deterrence, and prevention of further crimes. The defendant respectfully suggests that when these factors are considered the requested sentence becomes obviously appropriate.

Section 3553 (a) requires a sentencing Court to consider deterrence, both general and specific. As to specific deterrence, this arrest has affected Mr. Irizarry and his arrest and subsequent incarceration have seared into his mind the quest to live a law-abiding life and to repay society for the harms he has caused. However, I would add to those facts the analysis provided by some empirical studies that have been conducted by specialists in this area that support the proposition that Mr. Irizarry will lead a law abiding life once released from prison. The Probation Officer has stated that he believes that Mr. Irizarry "poses a moderate risk of recidivism."

Studies have considered many factors in determining which defendants are most likely to become recidivists. See, USSC, *Measuring Recididivism* (2004). One factor considered is employment. The studies have demonstrated that if a person has maintained stable employment in the past the recidivism rate drastically lowers. Mr. Irizarry has maintained steady employment throughout his life. Thus, this factor points to a lower chance of future illegal behavior.

Researchers have also considered family connections as an important factor when measuring the chance of repeat convictions. The studies have observed that if a person has close ties to his present family members the chance of recidivism is lowered. Here, Mr. Irizarry is very close with his mother and sibling. (P. 50) His mother, and his brother have all been very supportive of Mr. Irizarry throughout this ordeal. His brother relates that he was surprised at this arrest and that his brother who has a good heart, often helps other family members. (P. 49,50) They have been in constant communication with me and have stated a desire to be there for Mr. Irizarry once he is released from custody and help him reintegrate into society. This would indicate that Mr. Irizarry is not regarded as a high risk to become a recidivist.

A final factor is whether the offender is charged with a violent or non-violent crime. The studies have proven that a person sentenced under the fraud, larceny and **narcotic** Guidelines are the least likely to recidivate. Here, there are no violent acts associated with Mr. Irizarry thus, he is not considered a high risk to recidivate.

Therefore, when these factors are considered in their entirety it is clear that Mr. Irizarry falls into the category of individuals who are least likely to recidivate. Therefore, not only does his personal history demonstrate a low chance of recidivism on his part, the empirical studies conducted by the experts in the field indicate that he has a very low chance to commit new crimes upon his release from jail. When this is combined with the fact that Mr. Irizarry will also be on supervised release for many years after his release from prison and thus be within the control of this Court and Probation the chances of Mr. Irizarry committing new crimes is minimal.

A Sentencing Court must also consider "general deterrence" when deciding a sentence. Here again the experts have conducted many studies and they have routinely found that there is **no** empirical relationship between sentence length and specific or general deterrence. In all categories of crime from white collar to drug offenses, from violent crimes to larcenies severe sentences have proven not to deter crime. The studies have shown however that lengthy sentences do increase the rate of recidivism. See, Lynne M. Vieraltis et. al., *The Criminogenic*

4

*Effects of Imprisonment: Evidence from State Panel Data 1974-2002,* 6 Criminology & Pub. Pol'y 589, 591-93 (2007), U.S. Sent'g Comm'n Staff Discussion Paper, *Sentencing Options under the Guidelines* 18-19 (Nov.1996), available at http://www.ussc.gov/SIMPLE/sentopt.htm, Miles D. Harer, *Do Guideline Sentences for Low Risk Drug Traffickers Achieve Their Stated Purposes?*, 7 Fed. Sent. Rep 22 (1994).

Indeed, while many believe that the higher the sentence, the greater the effect in deterring others, the scientific research shows no relationship between sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. But the question for this Court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime. Here the findings are uniformly negative: there is no evidence that increases in sentence length reduces crime through deterrence. Current empirical research on general deterrence shows that while **certainty** of punishment has a deterrent effect, "increases in severity of punishments **do not** yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006)

The fact that "general deterrence" is not considered by people considering committing crimes is best demonstrated by the studies of white-collar crimes. For purposes of argument it can be rationally presumed that the white-collar criminal is the most rational of criminal offenders. That if any criminal offenders were going to consider all of the pluses and minuses of committing a criminal act, a white collar criminal would be most likely to indulge in that type of thinking. However, the studies show that there is no difference in the deterrence factor between probation and imprisonment for white-collar offenders. That is, offenders given terms of probation were no more or less likely to reoffend than those given prison sentences. See, David Weisburd et.al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes,* 33 Criminology 587 (1995).

This has proven to be true especially in narcotics cases. In a recent study of drug offenders sentenced in the District of Columbia, researchers tracked over a thousand offenders whose sentences varied substantially in terms of prison and probation time. Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, (October 28, 2009), Criminology (May, 2010). The results showed that variations in prison and probation time "have no detectable effect on rates of re-arrest." "Those assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame." In other words, "at least among those facing drug-related charges, incarceration and supervision seem not to deter subsequent criminal behavior." Id.

The reason for this is that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the manner one might expect of rational decision makers. Tonry, *Purposes and Functions of Sentencing, supra*, at 28-29. A recent review of this issue concluded: "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

The Commission itself has found that "[t]here is no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." See USSC, Measuring Recidivism at http://www.ussc.gov/publicat/Recidivism_General.pdf. State law enforcement officials at the Commission's recent hearing confirmed the research results. Chief John Timoney of the Miami Police Department testified that the deterrent effect of the federal system is not its high sentences but the certainty that there will be punishment. Mr. Irizarry will express to this Court in his statement, that he has learned the lesson that society does not accept narcotic behavior and if he ever involves himself in selling narcotics again, he will be excluded from society. Mr. Irizarry has lived excluded from society and all the freedoms it brings for many months and he has learned that if he persists in pedaling narcotics he will be placed behind bars again. Prison time has had its effect on Mr. Irizarry. He knows if he returns to criminal conduct his sentence will be severe and he is determined to not let that occur, he values life outside of jail too much at this point.

Courts have also begun to take into consideration the lack of effect of "general deterrence". In United States v. Beiermann, 599 F. Supp. 2d 1087, 1103-04 (N.D. Iowa 2009) the Sentencing Court after reviewing empirical evidence regarding the continuing increase in the number of drug and child pornography offenders despite the war on each and stiff federal sentences, concluded that "there is not a sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet. . . . This does not mean that [the defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of." This Court in considering what sentence Mr. Irizarry should receive for her conduct must of course consider "general deterrence" but based on the above studies it is respectfully submitted that this Court should consider "specific deterrence" to a greater degree than "general deterrence".

When considered under these parameters the defendant respectfully submits that a sentence of Eighteen (18) months followed by a significant period of supervised release sufficiently meets both the requirements of specific and general deterrence. This sentence requires the defendant to spend a considerable amount of time in jail. It cannot be said that he was not punished for his acts but also counters the desire to more severely punish Mr. Irizarry. The studies cited and Mr. Irizarry's own personal history demonstrate that Mr. Irizarry has a very good chance to lead a law abiding life from here on and has been deterred from committing any new crimes.

The object of this letter is to give this Court some insight into how and why Mr. Irizarry finds himself before your Honor awaiting the pronouncement of sentence and what sentence given the varied sentencing options the Court has at its disposal best accomplishes the goals of a Sentencing Court. It is the defendant's position that after considering all of the relevant factors of Mr. Irizarry situation, the law as it is today and the empirical studies done in this area that a sentence which has been requested would be reasonable herein. This sentence would meet the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481 (2007. It is the defendant's position that a Guideline sentence would be

6

inappropriate in this case. As previously stated, "no chart of numbers will ever fully contemplate, quantify and cipher the endless variations of the human experience. While it might provide a normalizing force in sentencing, we cannot, with a system of points and categories, reduce justice to a universal formula." <u>United States v. Coughlin</u>, No.6 Cr. 20005, 2008 WL 313099 (W.D. Ark Feb.1, 2008).

In <u>Gall</u> the District Court sentenced the defendant to a period of probation. The Guidelines had suggested a sentence of from 30-37 months. The District Court there commented on the defendant's efforts at rehabilitation during the period of time between the commission of the crime and the sentence date. The Eighth Circuit determined that the sentence was an "extraordinary" variance from the Guidelines, found that the sentence was not justified and remanded for re-sentence. The United States Supreme Court disagreed. Finding that the Circuit Court's analysis was constitutionally flawed, the Court reemphasized the position that the role of the Guidelines is merely advisory. As in <u>Gall</u>, the court here is presented with an individual who has been sufficiently punished and who will now begin to live a new chapter of his life.

Respectfully submitted,

Patrick Joyce

Cc: AUSA Alvin Bragg